No. 22817.

Shirley Jean Rugg *v.* G. McCarty and Nationwide Fi-
nance Company of Lakewood, a Colorado corporation.
(476 P.2d 753)

Decided November 16, 1970.

WILLIAMS, TAUSSIG and TRINE, MORRIS W. SANDSTEAD, JR., for plaintiff in error.

HELLERSTEIN and HELLERSTEIN, F. J. MANNING, for defendants in error.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

SHIRLEY JEAN RUGG, the plaintiff in error, is here by writ of error seeking reversal of an order of the trial court dismissing her complaint against G. McCarty and Nationwide Finance Company of Lakewood, a Colorado corporation, defendants in error, for failure to state a claim upon which relief could be granted. Rugg had sought relief from these defendants based on three theories: first, an invasion of the right of privacy; second, an intentional or reckless infliction of emotional distress without impact (without physical contact); and, third, unlawful interference with an employment contract. Rugg asserts the court erred in dismissing the complaint as it related to the claims based on invasion of privacy and intentional or reckless infliction of emotional distress without impact. No error is here predicated on the court's dismissal as it related to plaintiff's claim based on unlawful interference with her employment contract.

We disagree with the court's order of dismissal, and therefore reverse.

The complaint alleged that on November 9, 1965, Rugg enrolled for a one-year membership in a health studio operated by Universal Figure Form of Boulder, Inc., for a fee of $180 which she paid by signing a promissory note payable to Universal. Universal sold the note to Nationwide Finance. Rugg claimed that during the first exercise

lesson she sustained an injury which she attributed to the negligence of Universal's instructor; that the injury and her resulting condition progressively worsened; and that she was forced to quit her employment and was hospitalized in May of 1966. She sought damages from Universal based on negligence. Although Universal was a defendant in the trial court, the motion to dismiss was not directed to Rugg's claim of negligence against Universal, which is not a party to this writ of error.

Rugg alleged that it became impossible because of her physical condition to further engage in the exercise sessions, and she advised Universal and Nationwide Finance of this situation and sought to rescind the contract. Nationwide refused and she continued to pay as long as she was able and reduced the balance on the note to $44.50.

The critical allegations of Rugg's complaint charged that McCarty and Nationwide *repeatedly harrassed* her with numerous telephone calls and letters demanding payment, notwithstanding her explanation of her distressed circumstances and her promise to pay as soon as possible; that a letter was directed to her employer stating she was *not living up to her obligations* in a satisfactory manner and inquiring concerning how many garnishments would be tolerated, which communication was intended to harrass and pressure her; that Nationwide did not have a judgment against plaintiff and knew or should have known that it could not garnishee her wages, execute or otherwise attempt collection from her employer; that the acts of the defendants were done *wilfully and wantonly* in disregard of her rights; and that the acts of defendants were done *intentionally* with the *intention of causing plaintiff to suffer mental anguish, embarrassment, humiliation and extreme mental suffering.*

The trial court in dismissing the complaint found that the grounds for relief relied upon "considered either individually or collectively" did not sufficiently state a claim for relief, relying upon the decision in *Tollefson*

*v. Safeway Stores,* 142 Colo. 442, 351 P.2d 274. It is not clear from the record whether the trial court was disinclined to recognize the theories of tort upon which plaintiff predicated her claims, or whether the complaint was dismissed for want of a sufficient factual statement under the theories relied upon.

In *Tollefson* the Court stated:

"In the instant case there was no campaign of continuous harrassment, no attempt to vilify or expose plaintiff to public ridicule, and no effort to cause plaintiff to lose his position as a police officer. Even were we to recognize the 'right to privacy' as applicable in this state, we are persuaded that the facts of the instant case do not bring it within the doctrine. It is not an invasion of privacy to remind one of his obligations be they legal or moral."

In *McCreery v. Grocerteria Co.,* 99 Colo. 499, 64 P.2d 803, the Court alluded to the doctrine of right of privacy but declined to commit Colorado to recognition of the doctrine. We are urged to specifically recognize the theory of tortious conduct designated as the invasion of the right of privacy. We now do so, noting that our general assembly gave legislative recognition of the right of privacy by the enactment of 1967 Perm. Supp., C.R.S. 1963, 40-4-33, in connection with the wiretapping and eavesdropping statute, which provides: "There exists in the state of Colorado a right of privacy, an invasion of which may be compensated by damages."

The historical development of the right of privacy was first extensively discussed in the famous law review article written in 1890 by Samuel D. Warren and Louis D. Brandeis, entitled "The Right to Privacy," 4 Harv. L. Rev. 193. Professor Prosser comments: "Although there was at first some hesitation, a host of other legal writers have taken up the theme, and no other tort has received such an outpouring of comment in advocacy of its bare existence." *W. Prosser, Law of Torts* § 112 (3d ed. 1964). Among the multitude of treatises discussing this subject, *see: M. Ernst & A. Schwartz, Privacy: The*

*Right to Be Let Alone* (1st ed. 1962); *S. Hofstader & G. Horowitz, The Right of Privacy* (1964); *F. Harper & F. James, Jr., The Law of Torts* (1956); 77 C.J.S. *Right of Privacy;* 41 Am. Jur. *Privacy.*

We are now advised that at least thirty-two jurisdictions have recognized the tort of invasion of right of privacy.[1] Limited statutory recognition of the doctrine exists in three other states, New York, Utah and Virginia.

We do not attempt to comprehensively define the right of privacy, nor to categorize the character of all invasions which may constitute a violation of such right. We merely observe that considerable precedent exists in the area of oppressive conduct by a creditor in connection with his efforts to collect from his debtor. *Santiesteban v. Goodyear Tire and Rubber Co.,* 306 F.2d 9; *Cunningham v. Securities Invest. Co. of St. Louis,* 278 F.2d 600, *reh. denied* 281 F.2d 439; *Bowden v. Spiegal, Inc.,* 96 Cal. App.2d 793, 216 P.2d 571; *Brents v. Morgan,* 221 Ky. 765, 299 S.W. 967, 55 A.L.R. 964; *Booty v. Am. Finance Corp. of Shreveport,* 224 So.2d 512 (La. App.); *Pack v. Wise,* 155 So.2d 909 (La. App.); *Biederman's of Springfield, Inc. v. Wright,* 322 S.W.2d 892 (Mo.); *LaSalle Extension University v. Fogarty,* 126 Neb. 457, 253 N.W. 424, 91 A.L.R. 1491; *Housh v. Peth,* 165 Ohio St. 35, 133 N.E.2d 340; *Tollefson v. Price,* 247 Or. 398, 430 P.2d 990. *See also* 138 A.L.R. 91; 168 A.L.R. 462; 14 A.L.R.2d 770; 15 A.L.R.2d 158.

In *Tollefson v. Safeway Stores, supra,* this Court quoted with approval from *Housh v. Peth, supra:*

"* * * We recognize that a creditor has a right to take reasonable action to pursue his debtor and persuade payment, although the steps taken may result to a certain degree in the invasion of the debtor's right of privacy.

---

[1] Alabama, Arizona, California, Connecticut, Delaware, District of Columbia, Florida, Georgia, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maryland, Michigan, Mississippi, Missouri, Montana, Nevada, New Hampshire, New Mexico, New Jersey, North Carolina, Ohio, Oregon, Oklahoma, Pennsylvania, South Carolina, South Dakota, Tennessee and West Virginia.

Simply informing the debtor's employer of the fact the debt is owed, of itself, would not constitute an invasion of the right."

However, when *unreasonable action* in pursuing a debtor is taken, which foreseeably will probably result in extreme mental anguish, embarrassment, humiliation or mental suffering and injury to a person possessed of *ordinary sensibilities,* under the same or similar circumstances, then such conduct falls within the forbidden area and a claim for invasion of privacy may be asserted. *Reed v. Real Detective Pub. Co.,* 63 Ariz. 294, 162 P.2d 133; *Cason v. Baskin,* 155 Fla. 198, 20 So.2d 243; *Davis v. General Finance & Thrift Corp.,* 80 Ga. App. 708, 57 S.E.2d 225; *Meetze v. Associated Press,* 230 S.C. 330, 95 S.E.2d 606. The rule does not extend to supersensitive persons but adopts the standard of the ordinary man. It is not intended by this rule to curtail legitimate persuasion toward settlement of debtor accounts, as we recognize that private debt settlement is a desirable end in the field of commerce. The rule simply draws the line beyond which a creditor must employ legal remedies to collect from his debtor and may not resort to self-help by means of oppressive conduct amounting to unlawful intimidation.

In measuring the allegations of the complaint to determine whether it states a claim for relief, assuming as we must the truth of the statements of claim made therein, we find that a claim for relief is sufficiently stated based upon the invasion of the right of privacy. *Colo. Nat'l Bank v. Biegert,* 165 Colo. 78, 438 P.2d 506; *Gayton v. Colorado,* 149 Colo. 72, 367 P.2d 899; *Dillinger v. North Sterling,* 135 Colo. 100, 308 P.2d 608; *Stapp v. Carb-Ice Corp.,* 122 Colo. 526, 224 P.2d 935.

Rugg's second contention is that the complaint also states a claim for relief based upon the tort theory of intentional or reckless infliction of emotional distress without impact. For an in depth discussion of this general proposition, see Losli, *A Legal Dilemma — Injury Caused*

*By Psychic Stimuli,* 40 Denver L.C.J. 209 (1963). We recognize that an action in tort will lie to recover damages for severe emotional distress without any accompanying physical injury, subject to the limitations as set forth in *Restatement (Second) of Torts* § 46 (1965):

"Outrageous Conduct Causing Severe Emotional Distress "(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."

In commenting on the rule above stated, it is noted that liability has been found only in those cases where the defendant's conduct has been *extreme and outrageous.* "* * * Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Restatement, supra,* comment d at 73.

Tested by the foregoing standards, we find the allegations of the complaint sufficiently state a claim for relief predicated upon the rule above adopted, leaving for the jury to determine whether the conduct of defendants was extreme and outrageous.

The judgment is reversed and the cause remanded for further proceedings consonant with the views expressed herein.