536 P.2d 838 (1975)
Lorene BLACKWELL, Plaintiff-Appellant,
v.
Armando DEL BOSCO, Defendant-Appellee.
No. 74-286.
Colorado Court of Appeals, Div. II.
March 18, 1975.
Rehearing Denied April 8, 1975.
Certiorari Granted July 7, 1975.
*839 Michael J. Wood, Colorado Springs, for plaintiff-appellant.
Robert W. LaBree, Colorado Springs, for defendant-appellee.
Selected for Official Publication.
ENOCH, Judge.
Plaintiff, Lorene Blackwell, a residential tenant of defendant, Armando Del Bosco, initiated this action asking return of all rents paid to Del Bosco on the ground that Del Bosco had breached an implied warranty that the rental premises were habitable, and seeking $5,000 damages for Blackwell's alleged emotional distress caused by Del Bosco's outrageous conduct. Pursuant to C.R.C.P. 313(b)(1), a then pending forcible entry and detainer action by Del Bosco was transferred from the county court to the district court, where Del Bosco reasserted his claim as a counterclaim, seeking $260 unpaid rent for the months of August through November, 1973.
After a hearing on Del Bosco's F.E.D. claim, the district court directed Blackwell to return possession of the premises to Del Bosco and ordered Blackwell to pay Del Bosco $150 attorneys' fees and $17 court costs. The court stated that Del Bosco's claim for unpaid rent would be considered at a later time. Neither party has appealed from that order. Blackwell vacated the premises on the next day, November 28, 1973.
Subsequently further hearings were held before a jury regarding Blackwell's claims for relief. At the conclusion of Blackwell's evidence, the court dismissed the complaint, and Blackwell appeals. We affirm the dismissal of Blackwell's complaint.
The record does not indicate that Del Bosco's counterclaim for unpaid rent was ever specifically considered by the trial court. However, Del Bosco has not appealed that issue, and the judgment indicates that it is a final disposition of the case; therefore the judgment effectively disposes of all issues and is final for purposes of appeal.
*840 The record shows that in March of 1971 Del Bosco, as an investment, purchased a tract of developed property in Colorado Springs, with the intent to remove the improvements. After the purchase was completed Del Bosco discovered that Blackwell resided in a house situated on a portion of the property. Blackwell admitted that "a month-to-month oral lease" was created by the parties, whereby Blackwell could continue to rent the house for $65 per moth. Blackwell paid the monthly rental from April 1971 through July 1973, at which time she withheld further rent payments on the ground that Del Bosco had refused, in spite of repeated demands, to rectify several substantial violations of the Colorado Springs Housing Code on the premises.
In substance, Blackwell's complaint alleged that several specific defects in the plumbing fixtures and electrical wiring existed; that such defects were in violation of the Colorado Springs Housing Code; and that the windows and doors of the house were not air tight, and the windows could not be locked.
Del Bosco's answer did not contravene the substance of these allegations; instead, by his answer, he did "admit knowledge of [the defects] as of September 20, 1973." Since the existence of the defects and violations of the Housing Code were not denied, we treat them as admitted. C.R.C.P. 8(d). Although it is clear that the premises were in substantial violation of the Housing Code, there was considerable dispute in the testimony as to whether Del Bosco had notice of the defects prior to September 20, 1973.

Implied Warranty of Habitability
Blackwell's first claim for relief is predicated upon the theory that a landlord who rents residential premises impliedly warrants that the premises are habitable, with the standards of habitability being gauged generally by applicable building and housing codes. She also contends that housing codes are implied by force of law into all leases of residential property entered after enactment of the codes.
Blackwell argues that several jurisdictions have departed from the traditional common law and have accepted the implied warranty of habitability concept, and she seeks the recognition of such a warranty in this state.
Though there is authority in other jurisdictions supportive of Blackwell's argument, the present law in Colorado is to the contrary and is clearly stated in Colorado Mortgage & Investment Co., Ltd. v. Giacomini, 55 Colo. 540, 136 P. 1039, as follows:
"As between the landlord and tenant, when there is no fraud, false representations, or deceit, and in the absence of an express warranty or covenant to repair, there is no implied contract that the premises are suitable for or fit for habitation, or for the particular use intended, or that they are safe for use, or that they shall continue fit for the purposes for which they were demised."
Furthermore in Spicer v. Machette, 59 Colo. 214, 147 P. 657, the doctrine of implied warranty of habitability for residential leaseholds was specifically rejected. See also Capitol Amusement Co. v. Anheuser-Busch, Inc., 94 Colo. 372, 30 P.2d 264, where the court again rejected the implied warranty doctrine in spite of the apparent existence of a city housing code.
Therefore, we conclude that under the present state of Colorado case law, a landlord does not impliedly warrant that his residential rental premises are fit for human habitation, nor does he warrant that such premises are in compliance with applicable housing codes.
Moreover, even if the above cases did not preclude this court from adopting Blackwell's theory of implied warranty of habitability, we are not convinced that such an implied warranty would be appropriate in this case. Del Bosco purchased the property in question not knowing that *841 there was a tenant occupying the premises. He purchased the property as an investment with the intent eventually to remove the improvements. He did not purport to maintain the property for rental and permitted Blackwell to remain in possession at her request since she claimed to have no other place to move to. Thus the facts of this case do not show the unequal bargaining power resulting in overreaching by the landlord that has led other states to imply a warranty of habitability.

Emotional Distress
On this appeal, Blackwell bases her second claim for relief solely on the contention that Del Bosco's maintenance of a rental residence in admitted violation of the Housing Code constitutes outrageous conduct and that severe emotional distress resulting from such outrageous conduct is compensable. She has raised her emotional distress as an independent tort, as enunciated in Rugg v. McCarty, 173 Colo. 170, 476 P.2d 753, rather than as an element of damages recoverable in a suit for breach of contract, see, e. g., McCreery v. Miller's Groceteria, 99 Colo. 499, 64 P.2d 803, or for a more traditional tort such as assault and battery, Gerick v. Brock, 120 Colo. 394, 210 P.2d 214.
While recognizing that an action in tort will lie to recover damages for severe emotional distress without an accompanying physical injury, the court in Rugg expressly made the cause of action "subject to the limitations" of the Restatement (Second) of Torts § 46 (1965). The court quoted Comment d to § 46, which states that "liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."
As stated in Restatement, supra, Comment h:
"It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability."
We hold that the trial court was correct in concluding that, under the facts presented, Del Bosco's conduct could not reasonably be regarded as so extreme and outrageous as to permit recovery in this action.
Judgment affirmed.
STERNBERG, J., concurs.
PIERCE, J., dissents.
PIERCE, Judge (dissenting):
While I agree that Blackwell's damages claim for emotional distress is without merit, I cannot agree that an implied warranty of habitability should not be applied in this case.
At early common law the usual tenant was a farmer whose primary interest was in the land from which the rental payments and the tenant's livelihood could be obtained. Buildings on the property were only incidental and their construction was simple, enabling the tenant to make necessary repairs. As a result, the common law governed landlord-tenant relationships primarily by real property rather than contract law, and presumed relatively equal bargaining strength between the parties.
However, as argued by plaintiff, the situation of the modern city dweller is vastly different. Modern urban residents do not desire an interest in land, but seek "a well known package of goods and servicesa package which includes not merely walls and ceilings, but also adequate heat, light and ventilation, serviceable plumbing facilities, secure windows and doors, proper sanitation, and proper maintenance." Javins v. First National Realty Corp., 138 U. S.App.D.C. 369, 428 F.2d 1071, cert. denied, 400 U.S. 925, 91 S.Ct. 186, 27 L.Ed.2d 185. *842 The tenant generally possesses few repair skills and is usually not in a position of equal bargaining power, particularly when seeking low cost housing. As the majority acknowledges, several jurisdictions have dealt with this reality by giving recognition to an implied warranty of habitability in favor of the residential tenant.[1]
Our supreme court has recognized the existence of a contractual element in the landlord-tenant relationship, see Ruston v. Centennial Real Estate & Investment Co., 166 Colo. 377, 445 P.2d 64; and American Mining Co. v. Himrod-Kimball Mines Co., 124 Colo. 186, 235 P.2d 804. Also, such warranties have been implied in non-sale contractual situations. See Farnsworth, Implied Warranties in Non-Sales Cases, 57 Colum.L.Rev. 653, and § 4-2-313, C.R.S. 1973 (official comment 2) (C.R.S.1963, XXX-X-XXX). Furthermore, an analogous situation exists in the recognition of an implied warranty of workmanlike construction by a builder-vendor of a home. See Carpenter v. Donohoe, 154 Colo. 78, 388 P.2d 399. The evolution of tenancy relationships calls for the recognition in Colorado of a similar warranty by a landlord to his residential tenant.
Furthermore, the Colorado Springs Housing Code, in my opinion, does evince a contemporary public policy that landlords should bear the primary responsibility for maintaining safe, clean and habitable rental dwellings. The majority is of the opinion that Capitol Amusement Co. v. Anheuser-Busch, Inc., 94 Colo. 372, 30 P.2d 264, is a rejection of the implied warranty doctrine even where a housing code exists. I do not agree. That opinion did not consider the importance of the presence of the housing code to the problem at hand. It also is obvious that this important factor was not before the court in Colorado Mortgage & Investment Co., Ltd. v. Giacomini, 55 Colo. 540, 136 P. 1039, or in the 1915 case of Spicer v. Machette, 59 Colo. 214, 147 P. 657, upon which the majority rests their holding in this case.
Therefore, I would rule that a landlord impliedly warrants that a residential dwelling is fit for human habitation, and that, under the evidence presented, the issue of breach of that warranty should have been presented to the jury.
NOTES
[1] Green v. Superior Court, 10 Cal.3d 616, 111 Cal.Rptr. 704, 517 P.2d 1168; Javins v. First National Realty Corp., supra; Lemle v. Breeden, 51 Hawaii 426, 462 P.2d 470; Jack Spring, Inc. v. Little, 50 Ill.2d 351, 280 N.E.2d 208; Mease v. Fox, 200 N.W.2d 791 (Iowa); Boston Housing Authority v. Hemingway, ___ Mass. ___, 293 N.E.2d 831; King v. Moorehead, 495 S.W.2d 65 (Mo. App.); Kline v. Burns, 111 N.H. 87, 276 A.2d 248; Berzito v. Gambino, 63 N.J. 460, 308 A.2d 17; Morbeth Realty Corp. v. Velez, 73 Misc.2d 996, 343 N.Y.S.2d 406 (N.Y.City Civ.Ct.); Pines v. Perssion, 14 Wis.2d 590, 111 N.W.2d 409. Authorities for the history of the development of landlord-tenant law can be found in the Green and Javins cases and the Annot., 40 A.L.R.3d 646.