Sherri Lynn MITCHELL, Plaintiff,

v.

SURETY ACCEPTANCE CORPORATION
and Norwest Bank of Grand Junction, a
National Association f/k/a United Bank
of Grand Junction, Defendants.

Civ. A. No. 92–B–1456.

United States District Court,
D. Colorado.

Nov. 23, 1993.

Robert A. Lees, Denver, CO, for plaintiff.

Richard L. Thorgren, Harding & Ogborn, Denver, CO, for Surety Acceptance.

Katherine J. Peck, Lawrence Zavadil, Holme Roberts & Owen, Denver, CO, for Norwest Bank.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Defendant Surety Acceptance Corporation (Surety) moves for summary judgment on all claims against it. For the reasons set forth below, I will grant Surety's motion as to

plaintiff's claims for violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.*, and defamation. I will deny the motion, however, as to plaintiff's claim for violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*, and intentional infliction of emotional distress.

## I.

In 1985, the United Bank of Grand Junction mistakenly disclosed the plaintiff Sherri Lynn Mitchell's social security number and savings/checking account numbers to Sherrie Lou Mitchell (Sherrie Lou). Thereafter, Sherrie Lou, later known also as Sherrie L. Duke and Sherri Lou McWilliams, used plaintiff's name, social security number and savings/checking account information to withdraw monies from plaintiff's bank and conduct business transactions with certain creditors.

In December of 1986, Sherri Lou issued a check payable to Safeway in the amount of $88.02. That check was subsequently returned unpaid as a result of insufficient funds. In 1987, Safeway referred that item for collection to Surety, an Arizona debt collecting agency. Surety's attempts to locate Sherri Lou in the Phoenix area failed, and in January of 1989, Surety reported the item as a skip collection item to TRW, a credit bureau. At that time, Surety gave TRW the name of Sherri Lou McWilliams, with a last known address in Mesa, Arizona. Because the Safeway check did not contain a social security number, Surety did not provide that information to TRW.

In December of 1989, Sherri Lou was involved in an auto accident in Phoenix, Arizona. At that time, Sherrie Lou utilized plaintiff's social security number in her identification to the police officer investigating the accident. Later, an investigator for a non-party collection firm obtained the accident report which listed plaintiff's social security number, and erroneously concluded that plaintiff and Sherrie Lou were one and the same individual. That conclusion was then reported to TRW.

On February 12, 1991, plaintiff, after learning of negative credit information contained on her credit report, requested a copy of her TRW credit report from TRW. TRW received the February 12, 1991 credit report back from plaintiff on May 15, 1991 with disputes noted on it. Plaintiff disputed many accounts including the account reported by Surety.

In June 1991, Surety received a dispute verification form from TRW regarding the information previously supplied by Surety with respect to the Safeway check. Surety checked a box on the form provided by TRW indicating that the information was verified as reported. TRW provided Surety with information that Sherrie Lou was also known as plaintiff, Sherrie L. Mitchell, with an address in Denver, Colorado.

On June 14, 1991, Surety mailed plaintiff a demand letter seeking repayment of the check issued to Safeway in 1986. Plaintiff then contacted Surety on June 27, 1991, advising it that she was not Sherrie Lou and that she was not liable for the check. Surety continued to report to TRW that the debt was verified as reported.

Plaintiff asserts four claims for relief against Surety based on the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.*, one claim based on the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*, and claims for defamation and outrageous conduct.

## II.

Fed.R.Civ.P. 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any, which it

believes demonstrate the absence of genuine issues for trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553; *Mares v. ConAgra Poultry Co., Inc.,* 971 F.2d 492, 494 (10th Cir.1992).

Once the moving party demonstrates an absence of evidence supporting an essential element of the plaintiff's claim, the burden shifts to the plaintiff to show that there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. To satisfy this burden the nonmovant must point to specific facts in an affidavit, deposition, answers to interrogatories, admissions, or other similar admissible evidence demonstrating the need for a trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Mares,* 971 F.2d at 494.

Summary judgment is also appropriate where no reasonable jury could return a verdict for the claimant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511; *Mares,* 971 F.2d at 494. However, summary judgment should not enter if, viewing the evidence in light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512; *Mares,* 971 F.2d at 494.

### III.

#### A. Application of FCRA

Plaintiff's first, second, fourth and sixth claims for relief contend that Surety violated the provisions of the Fair Credit Reporting Act by 1) either willful or negligent failure to reinvestigate and delete information which the plaintiff had demonstrated to be inaccurate, 2) failure to follow reasonable procedures to assure accuracy of information concerning the plaintiff, and 3) negligent noncompliance with the requirements of FCRA. Surety argues that it is not a consumer reporting agency under FCRA and, therefore, the claims pursuant to FCRA must be dismissed. I agree.

The Fair Credit Reporting Act was adopted to assure that consumer reporting agencies adopt reasonable procedures to protect the accuracy and confidentiality of consumer credit information. 15 U.S.C.A. §§ 1681(a)(4), (b); *Heath v. Credit Bureau of Sheridan, Inc.,* 618 F.2d 693, 695 (10th Cir. 1980). Pursuant to 15 U.S.C.A. § 1681a(f), a consumer reporting agency is defined as:

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C.A. § 1681a(f).

Surety is a debt collection agency and has supplied sworn testimony to the effect that "Surety is not in the business of assembling or evaluating consumer credit information for the purpose of furnishing consumer reports to third parties. Rather, Surety seeks to collect bad accounts referred to us by clients." Affidavit of Art Gordon, Assistant Manager, Surety Acceptance Corporation, ¶ 2. Plaintiff has failed to make a sufficient showing to raise a genuine issue of fact that Surety is a credit reporting agency.

Unsupported allegations that Surety is a credit reporting agency are not sufficient to meet her burden on this motion for summary judgment. Numerous courts have held that merely furnishing information to a credit reporting agency is not enough to transform the reporting company into a consumer reporting agency under the statute. *Smith v. First Nat. Bank of Atlanta,* 837 F.2d 1575, 1579 (11th Cir.1988), *cert. denied,* 488 U.S. 821, 109 S.Ct. 64, 102 L.Ed.2d 41 (1988); *D'Angelo v. Wilmington Medical Center, Inc.,* 515 F.Supp. 1250, 1253 (D.Del.1981); *Zeller v. Samia,* 758 F.Supp. 775, 782 (D.Mass.1991). At least one court has specifically held that a debt collection agency is not subject to FRCA. *D'Angelo,* 515 F.Supp. at 1253. Because plaintiff's claims pursuant to the FCRA apply only to credit reporting

agencies, I will grant Surety's motion on these claims.

## B. Application of FDCPA

Plaintiff's third claim for relief asserts that Surety violated sections 1692c through g of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C.A. § 1692 (1982), through the use of false, deceptive, or misleading representations in connection with attempts to collect a debt against the plaintiff. The FDCPA was enacted to eliminate false, deceptive, misleading, unfair, or harassing debt collection practices. *Rutyna v. Collection Accounts Terminal, Inc.*, 478 F.Supp. 980 (N.D.Ill.1979).

■ Surety first argues that plaintiff's claim pursuant to the FDCPA is time-barred. The FDCPA contains a one-year statute of limitations provision. Section 1692k(d) directs that any action to enforce liability under the statute must be commenced within one year from the date on which the violation occurs. 15 U.S.C.A. § 1692k(d). Surety argues that because the last contact it had with the plaintiff occurred in June of 1991, the third claim for relief is untimely and must be dismissed. Plaintiff responds that her claim under FDCPA relates back to the filing date of the original complaint. I agree.

An amendment of a pleading relates back to the date of the original pleading when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R.Civ.P. 15(c). Plaintiff's claim against Surety under the FDCPA arises out of the same conduct alleged in the complaint, dated July 23, 1992. Hence, the amended complaint relates back to July 23, 1992. However, any violation that plaintiff may allege is based on events occurring before July 23, 1991 is time-barred; this includes plaintiff's phone conversation with Surety on June 14, 1991.

■ Plaintiff alleges that Surety violated the FDCPA through contacts with TRW as late as October 22, 1991, and arguably as late as June 8, 1992, in continuing to refuse to correct the information it provided to TRW. Section 1692e(8) of the FDCPA states:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: ... (8) Communicating or threatening to communicate to any person credit information which is known or should be known to be false, including the failure to communicate that a disputed debt is disputed.

15 U.S.C.A. 1692e(8). Plaintiff's factual allegations raise an issue of fact as to whether Surety violated this provision. I conclude that summary judgment is inappropriate on plaintiff's FDCPA claim.

## C. Defamation

■ Plaintiff's claim for defamation is preempted by § 1681h(e) of the FCRA, which provides Surety with qualified immunity on the claim of defamation:

Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C.A. § 1681h(e) (1982). This provision applies to Surety as one who "furnishes information to a consumer reporting agency." *Id.* No defamation action is allowed under the FCRA unless it is alleged the defendant acted with malice or a willful intent to injure the plaintiff. *Thornton v. Equifax, Inc.*, 619 F.2d 700, 703 (8th Cir.), *cert. denied*, 449 U.S. 835, 101 S.Ct. 108, 66 L.Ed.2d 41 (1980); *Grant v. TRW, Inc.*, 789 F.Supp. 690, 693 (D.Md.1992).

■ Surety supports its motion for summary judgment with an affidavit from Art Gordon, Assistant Manager, Surety Acceptance Corporation, establishing an absence of malice or willful intent to injure on behalf of Surety. Plaintiff has failed to allege and

articulate facts sufficient to rebut the qualified immunity of § 1681h(e) and create a genuine issue of fact as to Surety's possession of malice or willful intent. Accordingly, I will grant summary judgment on plaintiff's claim for defamation.

### D. Outrageous Conduct

As her final claim for relief, Plaintiff contends that Surety failed to correct false and libelous statements made about her, "harassed, annoyed and ridiculed plaintiff and told her that she would have no further problems if she merely paid her debts, accused her of lying, and otherwise tormented her." Second Amended Complaint, ¶ 42. Plaintiff alleges that such conduct on the part of Surety constitutes intentional infliction of mental and emotional harm.

■ In Colorado, liability for the tort of intentional infliction of emotional distress may be found only where "the conduct has been so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Grandchamp v. United Air Lines, Inc.*, 854 F.2d 381, 383 (10th Cir.1988) (quoting *Rugg v. McCarty*, 173 Colo. 170, 476 P.2d 753, 756 (1970)). The "defendant's conduct must be more than unreasonable, unkind or unfair; it must truly offend community notions of acceptable conduct." *Grandchamp*, 854 F.2d at 383. While the jury determines the ultimate question whether conduct is outrageous, the court must decide whether reasonable persons could differ on the conduct being outrageous. *Rugg v. McCarty*, 173 Colo. 170, 476 P.2d 753, 754 (1970).

■ In *Rugg*, actions to collect a debt on a one-year membership to a health studio was found to state a claim for outrageous conduct. There, plaintiff sought to rescind her contract with the health studio when she was injured during her first exercise class, was forced to quit her employment and was hospitalized. The conduct found by the court to be sufficient to state a claim included repeated harassment with numerous telephone calls and letters demanding payment, notwithstanding the plaintiff's explanation of her distressed condition and her promise to pay as soon as possible; and, sending a letter to plaintiff's employer stating she was not living up to her obligations in a satisfactory manner and inquiring concerning how many garnishments would be tolerated when the defendant did not have a judgment against the plaintiff. *Rugg*, 476 P.2d at 754.

As I find nothing outrageous in the letter sent to plaintiff on June 14, 1991, her claim for outrageous conduct must rest, if at all, on the phone call initiated by plaintiff to Surety on June 27, 1991. In response to interrogatories, the plaintiff sets forth the nature of this phone conversation:

I have documentation that I spoke to Surety representatives personally in 1991. First, I received a letter of June 14, 1991 from Surety Acceptance Corporation addressed to "Sherrie L. McWilliams, a.k.a. Sherri L. Mitchell" (Exhibit 9). On June 27, 1991, I called Tim West, the person who signed the letter. I told Mr. West that I was not "Sherrie L. McWilliams," I told him that she had been using my social security number, that I had been diagnosed with MS, that the stress caused by these credit problems was aggravating my condition, that the incorrect information on my report had cost me the chance to buy a house and a job in which I had returned to school and that the continued misidentification was making me feel like my life was no longer worth living.

He did not believe a word I said. He only implied that I was lying by laughing and telling me that "according to our source, you are responsible to pay this debt. So, you might as well pay it!" He obviously thought I had made up the entire story. I told him of my letters to TRW and that TRW had said they would forward the letters I had sent. I pleaded with him to read the letters; he advised me to send a copy of my driver's license as proof that I had a different social security number than McWilliams'; I repeated that she had been using my social security number; thus, the number they had for her was in fact mine. He just repeated his previous comment about his source and to pay the debt, because that would be the

only way that you could get the collection account off your report. (I found out later, according to their read-out of McWilliams' account, that TRW was the "source.")

I asked to speak with a supervisor, he laughed and said, "O.K., but she'll just tell you the same thing." Then, Mary Steven got on the phone. She did also tell me the same thing. Both obviously did not believe me and were unconcerned about my physical and mental state. Thus, they did not take the time to check out my story nor would they take the numbers of Officer Mark Angelo and Kris Shoemaker, who had investigated this incident and could verify my story.

(Plaintiff's Response to Surety's Interrogatories, pp. 8–9).

I conclude that an issue of fact exists as to whether reasonable jurors could find Surety's conduct atrocious or utterly intolerable in a civilized community. Summary judgment will be denied on plaintiff's claim for intentional infliction of emotional distress.

Accordingly, it is ORDERED that Surety's motion for summary judgment will be granted in part and denied in part:

1) Surety's motion for summary judgment is GRANTED on plaintiff's claims for violations of the Fair Credit reporting act and defamation;

2) Surety's motion for summary judgment is DENIED on plaintiff's claim for violation of the Fair Debt Collection Practices Act and intentional infliction of emotional distress.