FILED
United States Court of Appeals
Tenth Circuit

August 14, 2018

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ALBERT FOWLER; ANDREA
FOWLER,

     Plaintiffs - Appellants,

v.

BANK OF AMERICA, CORPORATION;
BANK OF AMERICA, N.A.; BAC HOME
LOANS SERVICING, LP, f/k/a
Countrywide Home Loans Inc.,

     Defendants - Appellees.

No. 16-1346
(D.C. No. 1:15-CV-01797-MJW)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MORITZ, KELLY**, and **MURPHY**, Circuit Judges.
_____

Plaintiffs Albert and Andrea Fowler sued Bank of America and its affiliates

(collectively, Bank of America)[1] for violating the Real Estate Settlement Procedures

Act (RESPA) of 1974, 12 U.S.C. §§ 2601–2617, as well as various Colorado state

laws. In support, the Fowlers alleged that Bank of America failed to adequately

---

[*] This order and judgment isn't binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. But it may be cited for its persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

[1] The Fowlers named Bank of America, Corporation; Bank of America, N.A.; and BAC Home Loans Servicing, LP as defendants. Bank of America, N.A. is a wholly owned subsidiary of Bank of America Corporation. BAC Home Loans Servicing, LP has merged into Bank of America, N.A. and ceased independent corporate existence.

respond to hundreds of letters the Fowlers sent Bank of America regarding their home loan. The district court dismissed the Fowlers' complaint for failure to state a claim and denied their motion to amend. *See* Fed. R. Civ. P. 12(b)(6). We affirm.

**Background**

We derive the following facts from the Fowlers' complaint and view those facts in the light most favorable to them. *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) ("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff.").

Bank of America owned and serviced a mortgage on the Fowlers' home. The Fowlers' loan fell into delinquency from 2009 to 2014, which subjected their home to foreclosure. In 2012, the Fowlers began sending a series of letters about their loan to Bank of America and continued sending these letters until July 2015, the month before they filed their complaint. In total, the Fowlers allege they sent at least 867 letters to Bank of America at various addresses.

The Fowlers filed this action in the district court on August 20, 2015—a little more than one month after they sent the last of their letters. They alleged that RESPA and its Colorado analog, Colo. Rev. Stat. Ann. § 38-40-103(2), required Bank of America to substantively and timely respond to each of their letters. And although the Fowlers concede that Bank of America sent many response letters, they nevertheless contend that, with one exception, those responses either weren't sufficiently substantive or weren't sent within RESPA's prescribed timeframe. The Fowlers also

2

alleged that these 866 nonresponses, late responses, and inadequate responses (1) were an unfair trade practice prohibited by the Colorado Consumer Protection Act (CCPA), Colo. Rev. Stat. Ann. §§ 6-1-101–115, and (2) amounted to intentional infliction of emotional distress.[2] Bank of America moved to dismiss and the Fowlers moved for leave to amend their complaint. The district court—via a magistrate judge presiding by consent—granted Bank of America's motion and denied the Fowlers' motion as futile. The Fowlers appeal.

## Analysis

The Fowlers argue that the district court erred in dismissing their complaint because it states a claim under four separate legal theories. We analyze their arguments de novo, looking only to the face of the complaint and the documents incorporated therein by reference. *See TMJ Implants, Inc. v. Aetna, Inc.*, 498 F.3d 1175, 1180 (10th Cir. 2007).

## I.    Real Estate Settlement Procedures Act

The Fowlers' primary claim is that Bank of America violated RESPA by failing to properly respond to their letters. But, as elaborated below, the Fowlers don't point to any specific, actionable RESPA violation. Instead, they broadly allege that Bank of America had a duty to respond to each of their letters, that Bank of America failed to timely and substantively do so, and that each nonresponse caused

---

[2] The Fowlers also brought claims under the Truth in Lending Act (TILA) of 1968, 15 U.S.C. §§ 1601–1667f, and for common-law fraud and promissory estoppel. The district court dismissed these claims as well, and the Fowlers concede that they don't challenge this aspect of the district court's ruling on appeal.

them harm. We conclude that such general allegations are insufficient to state a RESPA claim.

RESPA provides a mechanism for borrowers to seek information from and protest errors to their mortgage servicers. Specifically, RESPA requires servicers to respond to a borrower's qualified written request (QWR). A QWR is a "written correspondence" from the borrower to the servicer that (1) identifies the borrower and the borrower's account; and (2) either (a) asserts an error in the borrower's account or (b) requests information related to the servicing of the borrower's account. 12 U.S.C. § 2605(e)(1).[3] Once a servicer receives a QWR, it must "provide a written response acknowledging receipt of the correspondence within 5 [business] days." § 2605(e)(1)(A). Then, within 30 business days, the servicer must (1) correct the asserted error; (2) explain why it believes the account isn't in error; (3) provide the requested information; or (4) explain why the requested information is unavailable. § 2605(e)(2).[4]

---

[3] RESPA's implementing regulations distinguish between these two types of QWRs as "[n]otice[s] of errors" (NOE) and "[r]equests for information" (RFI). 12 C.F.R. §§ 1024.35(a), 1024.36. The Fowlers lament that the district court considered their QWRs "but failed to discuss or even mention" their NOEs or RFIs. Aplt. Br. 24. But because NOEs and RFIs are both types of QWRs, we see no harm with referring to them all as QWR's. We, like the district court, take this approach.

[4] On January 10, 2014—while the relevant events were ongoing—the period of time in which a servicer must respond to a QWR changed from 20 days for an acknowledgment and 60 days for a substantive response to the current requirement of 5 days for an acknowledgement and 30 days for a substantive response. *See Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1145 n.3 (10th Cir. 2013). Here, the Fowlers allege violations under both the old and new rule.

But a servicer's statutory duty to respond to a borrower's communication doesn't "arise with respect to *all* inquiries or complaints from borrowers to servicers." *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 666 (9th Cir. 2012). Rather, a letter isn't a QWR—and thus doesn't trigger the servicer's duty to respond—unless it "relat[es] to servicing," which RESPA defines as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts . . . , and making the payments of principal and interest and such other payments."[5] *Id.* (omission in original) (quoting § 2605(i)(3)). Further, RESPA's implementing regulations allow servicers to designate an address to which all QWRs must be sent before they will trigger the servicer's duties under RESPA. 12 C.F.R. § 1024.36(b); *see also Berneike*, 708 F.3d at 1149 (holding that servicers have no duty to respond to QWRs not sent to designated address). And the regulations also excuse a servicer from its duty to respond to a QWR if the servicer determines the QWR makes a request that is duplicative or overbroad. § 1024.36(f)(1). But in such a case, the "servicer shall

---

[5] Bank of America argues that none of the letters the Fowlers sent while their loan was in default are related to servicing because, by definition, Bank of America was not servicing the Fowlers' loan at that time. Essentially, the argument goes, Bank of America can't be receiving payments the Fowlers aren't making.

We haven't addressed this question. Nor, to our knowledge, has any other circuit court. And lower courts are split on its answer. *Compare Pike v. Bank of Am., N.A.*, No 14-2529, 2015 WL 3824390, at *5 (N.D. Ohio June 19, 2015), *with Fluegge v. Nationstar Mortg., LLC*, No. 12-15500, 2013 WL 5435320, at *3 (E.D. Mich. Sept. 27, 2013). Because we ultimately conclude that the Fowlers fail to state a RESPA claim, we will assume, without deciding, that the letters the Fowlers sent while in default could be related to servicing.

notify the borrower of its determination in writing not later than five [business] days . . . after making such determination." § 1024.36(f)(2).

Moreover, not all RESPA violations are actionable. RESPA creates a private cause of action only for borrowers who can show actual damages from a servicer's noncompliance. *See* § 2605(f)(1)(A). But borrowers may recover statutory damages of up to $2,000 per violation if they can show the violation was part of a "pattern or practice of noncompliance" with RESPA's requirements. § 2605(f)(1)(B). We have thus held that "to survive a Rule 12(b)(6) motion to dismiss a claim under § 2605(e) of RESPA, plaintiffs must plead actual damages stemming from the failure to respond to requests or a pattern or practice of misconduct." *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 523 (10th Cir. 2013); *see also Renfroe v. Nationstar Mortg. LLC*, 822 F.3d 1241, 1246 (11th Cir. 2016) (explaining "there must be a 'causal link' between the alleged [RESPA] violation and the damages" (quoting *Turner v. Beneficial Corp.*, 242 F.3d 1023, 1028 (11th Cir. 2001))); *cf. Hintz v. JPMorgan Chase Bank, N.A.*, 686 F.3d 505, 511 (8th Cir. 2012) (holding that conclusory allegation that RESPA violations caused plaintiffs over $50,000 in damages failed to state a claim). And importantly, borrowers must plead damages for "each such failure" to respond. § 2605(f).

Here, Bank of America argues the Fowlers' RESPA claim fails for a number of reasons, including (1) the Fowlers' failure to send many of the letters to Bank of America's designated addresses; (2) the Fowlers' failure to assert an error or ask a question related to servicing in many of their letters; (3) the fact that the Fowlers sent

6

many of the letters while in default; (4) the fact that Bank of America actually responded to many of the Fowlers' letters, and (5) the Fowlers' failure to "link [Bank of America]'s alleged failure to respond to any given mailing to any alleged damages." Aplee. Br. 24. We agree with the last of these arguments and therefore don't address the remainder. Specifically, we conclude that although the Fowlers broadly allege that Bank of America's failure to respond to their letters harmed them in a myriad of ways, they don't allege a sufficient causal connection between any single violation and any specific, recoverable damages. Nor do their conclusory allegations of a pattern or practice of violations entitle them to pursue statutory damages.

## A. Actual Damages

The Fowlers plead three general categories of actual damages. First, they allege that Bank of America's RESPA violations subjected them to inaccurate credit reporting. But the Fowlers make no effort to connect the alleged RESPA violations with any inaccuracies in their credit reports; they merely allege that the inaccurate credit reporting is "causally and proximately linked" to Bank of America's alleged violations. Supp. App. vol. 1, 10. This is the sort of conclusory allegation we need not accept as true. *See Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). Without giving us a basis "to draw the reasonable inference that [Bank of America] is liable for" their inaccurate credit reporting, the Fowlers cannot state a claim for damages. *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013).

Next, the Fowlers allege that they incurred actual damages by expending court costs and attorney's fees in bringing this lawsuit. But as the Fifth Circuit explained in an unpublished opinion, litigation expenses and attorney's fees can't be actual damages because RESPA separately allows successful plaintiffs to recover such "fees and expenses *in addition* to actual damages." *Whittier v. Ocwen Loan Servicing, L.L.C.*, 594 F. App'x 833, 837 (5th Cir. 2014) (unpublished) (citing § 2605(f)); *see also* § 2605(f)(3) (creating liability, "[i]n addition to" actual and statutory damages, for "the costs of the action, together with any attorney[']s fees incurred in connection with such action"). We find this reasoning persuasive and adopt it here. If attorney's fees and litigation expenses were recoverable as actual damages, then § 2605(f)(3) would be superfluous. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001))). Thus, the attorney's fees and court costs the Fowlers incurred in this action can't support their claim of actual damages.

Finally, the Fowlers assert that the costs they incurred in sending their QWRs—including the cost of postage and other materials—constituted actual damages.[6] But as the Eleventh Circuit explained in an unpublished opinion, the cost

---

[6] For example, without distinguishing between which costs they incurred sending which letters, the Fowlers allege that they incurred $11,479.52 in printing expenses, $18,978.14 in "filing, scanning, [and] PDF conversion," and $230,894.72 in "professional administrative time." Supp. App. vol. 1, 10.

of sending a QWR can't be causally linked to the servicer's failure to adequately reply to that QWR. *See Baez v. Specialized Loan Servicing*, 709 F. App'x 979, 983 (11th Cir. 2017) (unpublished) ("[T]he cost of sending an initial request for information is not a cost to the borrower 'as a result of the failure' to comply with a RESPA obligation." (quoting § 2605(f)(1)(A))). We find this reasoning persuasive as well and also adopt it here. The logic is simple: a RESPA plaintiff incurs the cost of preparing and sending the QWR regardless of whether the servicer adequately replies, so the violation doesn't cause the plaintiff to incur these costs. *See id.* ("The servicer may adequately respond to the request, or it may not, but the postage cost to the borrower is the same in both instances."). Thus, that the Fowlers allege they incurred costs while sending their letters doesn't get them past Bank of America's motion to dismiss.

On the other hand, if Bank of America's nonresponse or inadequate response prompted the Fowlers to resend a QWR, then the costs of preparing the subsequent QWR are indeed traceable to the violation. But the Fowlers don't adequately allege this was the case regarding any of their letters. True, they broadly allege that they resent various letters because Bank of America failed to properly respond. But they fail to identify any particular letter that (1) actually meets the requirements of a QWR and (2) was necessary for them to resend because Bank of America's inadequate response left them without the information they sought.

This failure to specify dooms the Fowlers' RESPA claim. The Fowlers broadly implore us to reverse the district court's decision because, they say, some of the 867

9

letters they sent to Bank of America met all the requirements necessary to state a RESPA claim. But they concede that many—if not most—of their letters don't meet these requirements. It's thus crucial that the Fowlers point us toward the *specific* letter or letters that meet all the requirements of a QWR. And to show that Bank of America's failure to substantively or timely respond caused them to incur actual damages, they must show that they resent those *specific* letters.

But the Fowlers provide no such guidance. Indeed, in contravention of our appellate rules,[7] they fail to include in their appendix on appeal a single letter that they sent Bank of America. Instead, their appendix primarily consists of various tables summarizing the letters. One such table directs us to where a "[s]ample" of the letters can be found on the district court docket. Another summarizes the content of various letters that they sent. Yet another table includes a "[p]artial [a]ccounting" of responses Bank of America sent to the Fowlers. App. 43. But this table again merely makes reference to where the letters can be found in the district court docket.

These tables do little to help us evaluate the Fowlers' arguments without further context including (1) whether these letters were duplicates or triplicates (as the Fowlers concede many were); (2) whether Bank of America replied to any of these letters (timely or otherwise); and (3) the date and content of those replies—all

---

[7] *See* Fed. R. App. P. 30(a)(1) (requiring appellants to file appendix containing "relevant portions of the pleadings . . . and . . . other parts of the record to which the parties wish to direct the court's attention"); Fed. R. App. P. 28(a)(8)(A) (requiring appellants' briefs to include "citations to the . . . parts of the record on which the appellant relies"); 10th Cir. R. 30.1(B)(1) (requiring appellants to "file an appendix sufficient for considering and deciding the issues on appeal").

information necessary to properly assess whether the Fowlers can collect damages for resending these letters. The Fowlers' general citations to their summary tables simply do not put us on notice of the record support for their arguments.[8]

And even if we were willing to overlook the Fowlers' failure to include the letters in their appendix and search through the district-court record ourselves, we would nevertheless be unwilling to take on the task of comparing the letters to the various summary tables in an attempt to painstakingly piece together this 867-piece jigsaw puzzle. Not only would this be a dubious use of judicial resources, but it would carry us well beyond our obligation as the arbiters of this dispute. *See* 10th Cir. R. 30.1(B)(3) ("The court need not remedy any failure of counsel to provide an adequate appendix."); *Milligan-Hitt v. Bd. of Trs. of Sheridan Cty. Sch. Dist. No. 2*, 523 F.3d 1219, 1231 (10th Cir. 2008) ("If the appendix and its supplements are not sufficient to decide an issue, we have no obligation to go further and examine documents that should have been included, and we regularly refuse to hear claims predicated on record evidence not in the appendix."); *cf. United States v. Dunkel*, 927

---

[8] To be clear, we don't mean to suggest that RESPA plaintiffs must provide record support to survive a motion to dismiss. The Fowlers alternatively could have specified in their complaint (1) which letters Bank of America had a duty to respond to; (2) the exact manner in which Bank of America's response (or lack thereof) to those specific letters breached that duty; and (3) how those specific breaches harmed them. But to the extent that the Fowlers seek to rely on their exhibits to make up for the lack of specificity in their complaint, they fail in this endeavor.

F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").[9]

In short, the Fowlers must allege damages for "each . . . violation" to state a RESPA claim. But they only allege damages generally without showing a causal connection between any specific violation and any specific damages. Thus, they fail to state a plausible claim predicated on actual damages. *Cf. Hanson v. Bank of Am.*, 935 F. Supp. 2d 1128, 1144, 1146 (D. Colo. 2013) (considering RESPA claim in which plaintiff specifically pleaded damages caused by *each* alleged violation).[10]

---

[9] The Fowlers' deficiencies on appeal appear to be consistent with deficiencies in their filings below. The complaint itself failed to identify any specific letters that support their claims. Rather, the complaint broadly alleged that Bank of America failed to respond to all but one of the 867 letters they sent. Yet they then conceded that Bank of America had no duty to respond to many of those letters. And instead of directing the district court to the specific letters that actually supported their claims, the Fowlers included all 867 letters as exhibits with the apparent expectation that the district court would sort through them in search of viable claims. It declined to do so.

[10] Moreover, we can't readily discern on our own whether any of the Fowlers' letters meet the other elements of a RESPA violation. On the face of their complaint, the Fowlers only make the conclusory allegation that "each [letter] included a statement of the reasons for belief of the [Fowlers], to the extent applicable, to identify an error; request information related to the servicing of the loan, or; ask a question related to the servicing of the loan." Supp. App. vol. 1, 7. This "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

And even if we were to mine through the actual letters, it's abundantly clear that at least some of them don't meet the requirements for QWRs. For example, Bank of America directs us to a series of letters from Albert Fowler that ask, "[W]hy, when I specifically address correspondence regarding my loan to [Bank of America CEO] Brian T. Moynihan, [does] it never reach[] him for his review?" *E.g.*, Supp. App. vol. 1, 43. Such unconventional requests aren't reasonably related to servicing and Bank of America had no duty to respond to them. *See Medrano*, 704 F.3d at 666. Further, the Fowlers concede that Bank of America had no duty to respond to many of their

## B.     Statutory Damages

The Fowlers' complaint also alleges that they are entitled to statutory damages because Bank of America's inadequate responses to their QWRs are part of "a pattern or practice of noncompliance" with RESPA. § 2605(f)(1)(B). Initially, we note that it's unclear whether a RESPA plaintiff who hasn't sufficiently alleged actual damages can state a RESPA claim based on statutory damages alone. Section 2605(f)(1)(B) authorizes "additional" statutory damages when a RESPA violation is part of a pattern or practice. As the Eleventh Circuit noted, "the use of 'additional' seems to indicate that a plaintiff cannot recover pattern-or-practice damages in the absence of actual damages." *Renfroe*, 822 F.3d at 1247 n.4 (quoting § 2605(f)(1)(B)). In *Toone*, we appeared to assume that a RESPA plaintiff could rely solely on statutory damages, but we didn't actually resolve this issue because we held the plaintiff hadn't sufficiently pleaded statutory damages. *See* 716 F.3d at 523.

We need not resolve this question here either. As in *Toone*, the Fowlers' conclusory allegations "merely assert[] that a pattern or practice can be inferred from the failure to respond to their requests." *Id.* In that case, we concluded that "this inference [wasn't] plausible because of the conclusory nature of the allegations of the complaint and the failure to allege any violations with respect to other borrowers."

---

other letters because the Fowlers sent them to the wrong address. Thus, even assuming the Fowlers could show damages, it's not clear on the record before us that any specific letter both (1) actually relates to servicing and (2) was sent to a designated address.

13

*Id.* The Fowlers' complaint is indistinguishable in this regard from the complaint in *Toone. See id.* Thus, the Fowlers also fail to state a claim for statutory damages.

Because the Fowlers have not adequately pleaded actual or statutory damages, they fail to state a RESPA claim, and the district court properly dismissed those claims. *See id.* (dismissing RESPA claim that didn't adequately plead actual or statutory damages).

## II.    Colo. Rev. Stat. Ann. § 38-40-103(2)

The Fowlers next claim that Bank of America's inadequate responses to their letters violated RESPA's Colorado counterpart. *See* Colo. Rev. Stat. Ann. § 38-40-103(2). These statutes aren't identical. But like RESPA, its Colorado counterpart premises private causes of action on actual damages. *See* Colo. Rev. Stat. Ann. § 38-40-104(1). And although Colorado's statutory scheme doesn't require a showing of a pattern or practice of violations for statutory damages, it does explicitly tether statutory damages to a showing of actual damages. *See id.* ("If the court finds that actual damages have occurred, the court shall award to the debtor or borrower, in addition to actual damages, the amount of one thousand dollars . . . ."). The Fowlers therefore fail to state a § 38-40-103(2) claim for the same reason they fail to state a RESPA claim: they don't adequately allege any causal connection between Bank of America's asserted violations and their actual damages. And without plausibly alleging they are entitled to actual damages, they can't state a claim for statutory damages either. Accordingly, the district court didn't err in dismissing the Fowler's § 38-40-103(2) claim.

14

## III. Colorado Consumer Protection Act

The Fowlers next allege that Bank of America's nonresponses or inadequate responses violated the CCPA. To plead a private cause of action under the CCPA, a plaintiff must plead, inter alia, that he or she "suffered injury in fact to a legally protected interest[] and . . . that the challenged practice caused the plaintiff's injury." *Rhino Linings USA, Inc. v. Rocky Mtn. Rhino Lining, Inc.*, 62 P.3d 142, 146–47 (Colo. 2003).

The Fowlers base their CCPA claim on the same alleged conduct that gave rise to their RESPA and § 38-40-103(2) claims.[11] It therefore suffers the same flaw: the Fowlers don't plausibly allege a connection between "the challenged practice [and their] injury." *Id.* at 147. The Fowlers thus fail to state a CCPA claim.

## IV.    Intentional Infliction of Emotional Distress

The Fowlers lastly claim that Bank of America committed common-law intentional infliction of emotional distress (IIED) by not adequately responding to their letters. A defendant is liable for IIED under Colorado law if the defendant "by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another." *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999) (quoting *Rugg v. McCarty*, 476 P.2d 753, 756 (1970)). Colorado courts will only find

---

[11] The Fowlers' complaint also alleges that Bank of America's TILA and common-law fraud violations served as predicate violations for their CCPA complaint. But, as explained in note 2, *supra*, the Fowlers waived their underlying TILA and common-law fraud claims on appeal. They similarly haven't argued on appeal that these violations predicate their CCPA claim, so any such argument is likewise waived.

a defendant's conduct extreme and outrageous if "the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Rugg*, 476 P.2d at 756 (quoting Restatement (Second) of Torts § 46 cmt. d. (Am. Law Inst. 1965)). The Colorado Supreme Court has been clear that this is a "high standard." *Coors Brewing Co.*, 978 P.2d at 665.

The conduct the Fowlers allege here fails to meet this high bar. Indeed, in the mortgage context, Colorado courts have found that far more egregious conduct falls short of IIED's high standard. *See, e.g.*, *Hewitt v. Pitkin Cty. Bank and Trust Co.*, 931 P.2d 456, 459 (Colo. Ct. App. 1995) (affirming dismissal of IIED claim where on two separate occasions defendant promised not to foreclose on plaintiff's mortgage but then reneged and foreclosed the very next day). Therefore, the Fowlers have failed to state a plausible IIED claim.[12]

Having concluded that the Fowlers' complaint fails to state a claim for relief under RESPA, § 38-40-103(2), the CCPA, or IIED, we affirm the district court's order dismissing their complaint.

## V.    Motion to Amend

All that remains is the district court's order denying the Fowlers leave to amend. We review district court orders denying leave to amend for abuse of discretion. *Cohen v. Longshore*, 621 F.3d 1311, 1314 (10th Cir. 2010). But when the

---

[12] The district court didn't reach the merits of the Fowlers' IIED claim because it determined Colorado's credit-agreement statute of frauds precluded it. Because we conclude the Fowlers' IIED claim fails on the merits, we don't address this issue.

16

district court denies a motion to amend solely because the proposed amendments wouldn't remedy the complaint's legal defect, we review the district court's underlying legal conclusions de novo. *See id.*

The district court determined that the Fowlers' proposed amendment would be futile. The Fowlers argue on appeal that the district court should have granted their motion to amend because their proposed amendments "included clarification of fact, additional exhibits related to [their] emotional distress claim and a new claim for exemplary damages derivative of [Bank of America's] violations of RESPA and [§ 38-40-103(2)]." Aplt. Br. 37.

But the Fowlers don't include their motion to amend or their proposed amended complaint in the appendix on appeal. We therefore don't have sufficient material to address the Fowlers' arguments. *See* 10th Cir. R. 30.1(B)(1) ("Unless pro se, the appellant must electronically file an appendix sufficient for considering and deciding the issues on appeal."); 10th Cir. R. 30.1(B)(3) ("The court need not remedy any failure of counsel to provide an adequate appendix."); *Milligan-Hitt*, 523 F.3d at 1231.

Affirmed.

Entered for the Court

Nancy L. Moritz
Circuit Judge

17