**Virginia L. DONALDSON, Patricia B. Morale, and Lacinda J. Zavilla, Plaintiffs,**

v.

**AMERICAN BANCO CORPORATION, INC., and Rita Bass, individually and as a shareholder and owner of American Banco Corporation, Inc., Defendants.**

Civil No. 95–B–826.

United States District Court, D. Colorado.

Nov. 20, 1996.

Sandra L. Spencer, Frank D. Sledge, Kristi L. Blumhardt, White and Steele, P.C., Denver, CO, for Plaintiffs.

Carol M. Welch, Linda Zinser, Miller & Welch, L.L.C., Mark P. Field, Denver, CO, for Defendants.

Jay S. Horowitz, Krendl Horowitz & Krendl, Denver, CO, for Rita Bass.

## MEMORANDUM OPINION & ORDER

BABCOCK, District Judge.

This is a case about alleged pregnancy discrimination. Plaintiffs Virginia L. Donaldson (Donaldson), Patricia B. Morale (Morale), and Lacinda J. Zavilla (Zavilla) claim violations of 42 U.S.C. § 2000e et seq. by Defendants American Banco Corp. (Banco) and Rita Bass (Bass). Plaintiffs claim that defendants harassed and discriminated against them on the basis of their gender and their pregnancies. In addition, plaintiffs claim that defendants' conduct constitutes outrageous conduct that caused them severe emotional distress.

The following motions are pending:

1. Defendants' first motion for summary judgment;
2. Defendants' second motion for summary judgment (partial);
3. Defendants' motion to dismiss supplemental state law claim;
4. Defendant Bass's motion to dismiss;
5. Plaintiffs' request for sanctions against defendant Bass;

Many of the issues in these motions overlap, so I will address several of the motions in tandem.

### I.

The very purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir.1995). Fed.R.Civ.P. 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). If a reasonable juror could not return a verdict for the nonmoving party, summary judgment is proper and there is no need for a

**1460**

trial. *Celotex*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265.

For purposes of a motion to dismiss under Fed.R.Civ.P. 12(b)(6), I accept all factual allegations in the complaint as true and resolve all reasonable inferences in favor of the plaintiffs. *Tri–Crown, Inc. v. American Federal Sav. & Loan Ass'n*, 908 F.2d 578, 582 (10th Cir.1990). A case should not be dismissed for failure to state a claim unless the court determines that plaintiffs can prove no set of facts that entitle them to relief. *Id.*

## II.

Donaldson, Morale, and Zavilla were all employed by Banco when they became pregnant. Bass is the president and sole shareholder of Banco, which is a collection agency. Plaintiffs assert that Bass and Banco discriminated against them in the form of both harassment and involuntary terminations. The complaint contains two claims for relief. The first claim for relief is styled "Sexual Discrimination and Harassment." I will treat these as separate claims for sexual harassment and sex discrimination under Title VII. The second claim for relief is for outrageous conduct under Colorado state law. Through various motions, defendants move for summary judgment and/or dismissal of plaintiffs' claims. For the purposes of defendants' dispositive motions, I assume the following facts to be true.

Donaldson was hired by Banco on August 15, 1991, as a supervisor. She was promoted to manager on March 1, 1992. She announced her pregnancy on March 19, 1993, and she was involuntarily terminated on July 28, 1993, apparently as some sort of forced maternity leave. Banco rehired Donaldson on December 1, 1993, on a part-time basis, performing her duties from home via a modem. Donaldson returned to Banco full-time on February 1, 1994, in a different position. She was paid her pre-childbirth salary, but Donaldson contends that she no longer received significant benefits that she had previously received. Donaldson was involuntarily terminated on April 15, 1994. She filed a charge with the EEOC on June 21, 1994, alleging discrimination as a result of her sex and pregnancy.

Morale was hired by Banco on May 13, 1991, as a paralegal. In September 1992, she was promoted to manager of the legal department. Morale became pregnant and gave birth to a girl on July 26, 1993. After the birth of her child, Morale left work. She was rehired on a part-time basis in September or October 1993. Morale also worked from home via modem for some time. She returned to work full-time on December 1, 1993. Her hours were involuntarily reduced in February 1994 at Bass's direction. Morale was involuntarily terminated on March 9, 1994. She filed a charge with the EEOC on June 21, 1994, alleging discrimination as a result of her sex and pregnancy.

Zavilla began employment with Banco on March 1, 1990, as a "skip tracer." She was eventually promoted to client representative on February 19, 1992. Zavilla became pregnant and gave birth to a son on April 15, 1993, at which time she stopped work at Banco. Zavilla was rehired full-time on August 15, 1993, for a position in marketing, which was different than the position she previously held. Zavilla was involuntarily terminated on April 29, 1994. She filed a charge with the EEOC on June 21, 1994, alleging discrimination as a result of her sex and pregnancy.

All three plaintiffs allege that Bass made various derogatory comments to them and other employees regarding their pregnancies that created a hostile work environment. In addition, plaintiffs contend that Bass's comments and actions evince an intent to discriminate against them on the basis of their sex and pregnancies and that they were involuntarily terminated because of that discrimination. Plaintiffs invoke 42 U.S.C. § 2000e et seq. (Title VII), as amended by the Pregnancy Discrimination Act (PDA) (codified at 42 U.S.C. § 2000e(k)), in support of their claims. In addition, plaintiffs claim that defendants' conduct qualifies as outrageous conduct that has caused each of them severe emotional distress.

## III.

In their first and second motions for summary judgment, defendants move for

summary judgment on all of plaintiffs claims: sexual harassment, sex discrimination, and outrageous conduct. Defendants further move for summary judgment on any claims for sex discrimination that are not pregnancy-related on the basis that they are beyond the scope of plaintiffs' EEOC charges. Finally, defendants move for summary judgment on all of plaintiff Zavilla's claims arguing that they are either time-barred or outside the scope of her EEOC charge. For the following reasons, I will grant in part and deny in part defendants' motions for summary judgment.

## A. SEXUAL HARASSMENT (HOSTILE WORK ENVIRONMENT)

### 1. *Hostile Work Environment Based upon Same–Gender Discrimination*

Defendants argue that because plaintiffs admit that Bass's alleged comments did not contain sexual innuendo, they cannot be the basis for a Title VII claim. Defendants further contend that regardless of how hostile or abusive plaintiffs' work environment may have been, plaintiffs cannot maintain a Title VII harassment action because the alleged harasser (Bass) and the plaintiffs are all women. I disagree.

■■ A plaintiff may establish a Title VII violation by showing that "discrimination based on sex has created a hostile or abusive work environment." *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 66, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986). Hostile work environment harassment is discriminatory conduct that "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive work environment." *Sauers v. Salt Lake County,* 1 F.3d 1122, 1126 (10th Cir.1993); *see also Meritor Savings Bank,* 477 U.S. 57, 65, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (quoting 29 C.F.R. § 1604.11(a)(3)).

■■ The Tenth Circuit has expressly refused to limit the basis for hostile work environment claims to overtly "sexual" comments or acts. *Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1415 (10th Cir.1987). Rather, the court has stated that " 'any harassment or other

unequal treatment of an employee or group of employees that would not occur but for the sex of the employee or employees may, if sufficiently patterned or pervasive, comprise an illegal condition of employment under Title VII.' " *Id.* (quoting *McKinney v. Dole,* 765 F.2d 1129, 1138–39 (D.C.Cir.1985)). This position makes eminent sense as there is no basis in 42 U.S.C. § 2000e–2(a) for distinguishing gender-based discrimination from racial discrimination. Courts have long allowed racial discrimination to be established by showing a work environment pervaded by racial hostility and/or discrimination. *See, e.g., Johnson v. Bunny Bread Co.,* 646 F.2d 1250, 1257 (8th Cir.1981). Accordingly, it is inapposite that Bass's alleged comments were not "sexual" in nature. Rather, so long as the comments would not have been made but for the sex of the plaintiffs and they were pervasive enough to create a hostile environment, plaintiffs can maintain a Title VII claim.

■■ Defendants next argue that Bass's comments cannot give rise to a cause of action under Title VII because she and the plaintiffs are all women; therefore, Bass's comments could not have been made "because of" plaintiffs' gender. This argument also misses the mark. First, I recently held that harassment claims based upon "sexual" comments and acts by same-gender employees may be maintained. *Gerd v. United Parcel Service,* 934 F.Supp. 357 (D.Colo. 1996). In addition, 42 U.S.C. § 2000e(k) states that for the purposes of Title VII, "[t]he terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions." Therefore, "sexual harassment" includes "pregnancy-based harassment."

Bass was not pregnant at the time the alleged comments were made. The comments were clearly directed at plaintiffs because they were pregnant or had recently been pregnant. *See* Part III.A.2. Consequently, for the purposes of a pregnancy-based harassment claim, Bass's gender is irrelevant. In this context, the proper comparison is between pregnant and nonpregnant employees. *E.E.O.C. v. Ackerman,*

*Hood & McQueen, Inc.,* 956 F.2d 944, 948 (10th Cir.), *cert. denied,* 506 U.S. 817, 113 S.Ct. 60, 121 L.Ed.2d 28 (1992). The question remains, however, whether Bass's comments, although assumed true for the purposes of this motion, rise to the level of pervasiveness necessary to sustain a hostile work environment claim.

### 2. *Pervasiveness of Bass' Comments*

██ There is no "mathematically precise test" to determine whether an environment is "hostile" or "abusive" under Title VII. *Harris v. Forklift Systems,* 510 U.S. 17, 22, 114 S.Ct. 367, 371, 126 L.Ed.2d 295 (1993). The standard is an environment that would reasonably be perceived, and is perceived, as hostile or abusive. *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 2405–06, 91 L.Ed.2d 49 (1986). Isolated or trivial episodes of harassment are insufficient to satisfy this standard. *Id.* at 65, 106 S.Ct. at 2404. I must look to the totality of the circumstances to determine whether the alleged conduct is sufficiently pervasive to create a hostile environment. *Hicks v. Gates Rubber Co.,* 833 F.2d 1406 (10th Cir.1987). The factors that may be considered include: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris,* 510 U.S. at 23, 114 S.Ct. at 371. Actual psychological harm to the plaintiffs is not required. *Id.* In addition, evidence of harassment of employees other than the plaintiffs may be considered in determining whether a hostile work environment claim has been established. *Id.* at 1416.

██ On the record before me, I find genuine issues of material fact exist whether the work environment at Banco was and would reasonably be perceived as hostile or abusive.

Upon announcement of Donaldson's pregnancy, Bass asked Donaldson "Why, Virginia, why?" Then she said, "Jesus Christ, first Cindy [Zavilla], then Patty [Morale] and now you?" She also told Donaldson that Zavilla was too old to have a baby and that there would probably be something wrong with it.

Bass made several other comments regarding how children have a tendency to ruin lives and how women who attempt simultaneously to raise children and to work often run into trouble. Bass told Donaldson that she was the most career oriented out of the three plaintiffs and that if anyone was going to make it, it would be her. Def.Ex. 15, p. 16.

In the ensuing months, Bass also made the following derogatory remarks to Donaldson during her pregnancy: "Jesus Christ Virginia, your ass is huge!" "You look like you could squirt that baby out today!" "Do your tits hurt yet, Virginia?" "You look like you're going to give birth to an elephant!" Def.Ex. 15, pp. 16–17.

After Donaldson returned to work, Bass made the following comments: "Are you still breast feeding, Virginia? You smell like curdled milk." "You should get some clothes that fit, Virginia, you still look like you're pregnant, you're not are you?" "So, how is your crotch, Virginia?" Def.Ex. 15, pp. 17–18.

Morale reports similar occurrences. In early 1993, Bass stated to Morale "Jesus, Patty, can you believe Cindy [Zavilla]?—she's 39 years old and having her first baby!" A few months later, Bass told Morale "Jesus, Patty, your tits are huge!" In June, 1993, Bass stated "God, Patty, seems like you've been pregnant forever. Are you ever going to have that baby?" Def.Ex. 16, p. 13–14.

On more than one occasion both before and after Morale delivered her baby, Bass commented on breast feeding. She stated that "You [Morale] will smell like curdled milk" and "You will be dripping wet." Bass indicated that she had deep gouges in her shoulders from heavy breasts during breast feeding. In December 1993, Bass remarked to Morale and her husband "Did you know that elephants gestate for three years? I thought Patty was never going to have that baby!" Def.Ex. 16, p. 14.

After Morale's dismissal, Bass told Rachel Montano, another Banco employee who had recently lost some weight, "You look great, but don't lose too much weight or you might get pregnant." Bass also told Terri Good,

who replaced Morale in her supervisory capacity, "Now don't you get pregnant." Def. Ex. 16, p. 14–15.

Bass also made some derogatory comments to Zavilla regarding her pregnancy. When Donaldson told Bass of Zavilla's pregnancy, Bass remarked "Cindy! Our Cindy is pregnant? Cindy Zavilla is pregnant?" Later, Bass stated to Zavilla directly "My God, Cindy! You are almost 40 years old and having your first baby!" During the following months, whenever other women would announce their pregnancies, Bass would tell Zavilla "Cindy, you started it all," implying that it was Zavilla's fault that the other women had become pregnant. Def.Ex. 17.

Looking at the totality of the circumstances, I conclude that genuine issues of fact exist whether plaintiffs working environment was and would reasonably be perceived as hostile or abusive to women who become pregnant. *See Meritor Savings Bank,* 477 U.S. at 67, 106 S.Ct. at 2405–06. Although Donaldson appears to have had the most derogatory comments directed at her, evidence of harassment of any employee is relevant to each plaintiff's case. *See Harris,* 510 U.S. at 23, 114 S.Ct. at 371. In addition, although the alleged events occurred over a period of several months, they were pervasive enough to create a question of fact whether the plaintiffs' environment was and would reasonably be perceived as hostile. Accordingly, I will deny defendants' motion for summary judgment on plaintiffs' claim for sexual harassment due to hostile work environment.

## B. SEXUAL DISCRIMINATION (DISPARATE TREATMENT)

 Plaintiffs have also pleaded a claim for disparate treatment based upon their pregnancies. *See E.E.O.C. v. Ackerman, Hood & McQueen, Inc.,* 956 F.2d 944 (10th Cir.1992). As distinguished from a harassment claim, a disparate treatment claim under Title VII requires a plaintiff to allege that some employment decision was adversely affected by the defendant's discriminatory conduct. Here, all three plaintiffs allege that they were fired because of Bass's discrimination against women who become pregnant.

In addition, Donaldson contends that she was forced to take unwanted maternity leave because of defendants' discrimination. Defendants argue that plaintiffs have failed to establish a prima facie case of discrimination because plaintiffs were not discharged until several months after they had returned to work following the birth of their children. Defendants state that Title VII does not protect parents caring for small children from being fired because that is a gender-neutral problem. Accordingly, defendants contend that they are entitled to summary judgment on plaintiffs' claims of disparate treatment. Again, I disagree.

Disparate treatment claims are analyzed under a three-step paradigm set out by the Supreme Court. *See Texas Dept. of Commun. Affairs v. Burdine,* 450 U.S. 248, 254–56, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981). First, the plaintiff must establish a prima facie case of discrimination. Second, if the plaintiff carries her initial burden, the burden of persuasion shifts to the defendant to "articulate some legitimate nondiscriminatory reason" for the challenged actions. Third, if the defendant carries her burden, the plaintiff has an opportunity to prove that the reasons articulated by the defendant are "pretext" for discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Defendants here have not offered any evidence showing nondiscriminatory reasons for the termination of plaintiffs. Accordingly, so long as plaintiffs can establish a prima facie case of discrimination, they will survive summary judgment.

 To establish a prima facie case for disparate treatment based upon pregnancy discrimination, each plaintiff must show that: (1) she was pregnant; (2) she satisfactorily performed the duties required by the position; (3) she was discharged; and (4) her position remained open and was ultimately filled by a non-pregnant employee. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Quaratino v. Tiffany & Co.,* 71 F.3d 58 (2d Cir.1995). The burden of establishing a prima facie case is not onerous. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093–94, 67

L.Ed.2d 207 (1981). Defendants contend that plaintiffs have not established a prima facie case because, at the time plaintiffs were discharged, each had already delivered her baby and was no longer pregnant. I am not persuaded by defendants' argument.

42 U.S.C. § 2000e–2(a), as amended by the PDA, § 2000e(k), prohibits discrimination "on the basis of pregnancy, childbirth, or related medical conditions." The statute does not specify whether the discrimination must occur *during the pregnancy.* Essentially, defendants contend that if an adverse employment decision is not taken with regard to a female employee during her pregnancy, it is not actionable under Title VII (as amended by the PDA). Title VII cannot be read so narrowly. It would make little sense to prohibit an employer from firing a woman during her pregnancy but permit the employer to terminate her the day after delivery if the reason for termination was that the woman became pregnant in the first place. The plain language of the statute does not require it, and common sense precludes it. Were I to credit defendants' argument, women who are subject to adverse employment decisions because they honestly confess to an intention to have children in the future would have no redress. Such a rule would emasculate Title VII.

Defendants cite several cases out of context in an effort to narrow the scope of Title VII. For example, defendants cite *Maganuco v. Leyden Community H.S.,* 939 F.2d 440 (7th Cir.1991), for the proposition that the PDA's "scope is limited to policies which impact or treat medical conditions relating to pregnancy and childbirth less favorably than other disabilities." *Id.* at 444. The Seventh Circuit, however, made that statement in a case where the plaintiff was attempting to garner from her employer *greater* sick leave benefits for pregnant women than for other employees. By contrast, plaintiffs here allege that they were treated *less* favorably than their nonpregnant colleagues. In addition, to the extent that *Maganuco* can be read to state a general rule that pregnancy is only to be treated as a disability, I decline to follow it.

If Congress intended to treat pregnancy as a disability only, it would have enacted the PDA as part of disability legislation. Instead, Congress chose to incorporate the PDA as part of Title VII, an anti-discrimination statute. Moreover, there is at least some evidence that Congress intended the PDA to provide protection to women beyond the pregnancy period. As stated by Representative Ronald Sarasin, the PDA gives a woman "the right ... to be financially and legally protected before, during, and after her pregnancy." 124 Cong.Rec. 38574 (1978) (quoted in *Pacourek v. Inland Steel Co.,* 858 F.Supp. 1393, 1402 (N.D.Ill.1994)); *see also Quaratino v. Tiffany & Co.,* 71 F.3d 58 (2d Cir.1995) (denying defendant's summary judgment motion where defendant allegedly stated that "an employee who takes a maternity leave is on a track that puts her career second to her responsibilities as a mother," and fired an employee after return from maternity leave.)

Bass's comments evince an intent to discriminate against women who choose to become pregnant rather than concentrating solely on their careers. Here, plaintiffs do not claim only that they were fired because of problems associated directly with their pregnancies. Rather, they allege that defendants discriminated against them because of each plaintiff's individual choice to become pregnant and have children in the first place. The alleged discrimination started after each plaintiff announced her pregnancy, continued after a return to work, and culminated with unwanted termination. Plaintiffs have thus alleged a continuing pattern of discrimination that includes claims of both harassment and unlawful termination. I conclude that Title VII extends that far.

Plaintiffs have presented enough evidence to establish a prima facie case for discrimination. Defendants do not dispute that there is at least a genuine issue of fact whether each plaintiff was performing satisfactorily when discharged and was replaced by a nonpregnant employee. Furthermore, plaintiffs were pregnant when the discriminatory conduct began. Hence, plaintiffs have, for the purposes of this order, established a prima facie case. Given the presumption set forth in

*McDonnell Douglas,* a reasonable juror could, therefore, infer that plaintiffs' eventual dismissals were the result of continuing discrimination based upon their pregnancies.

## C. OUTRAGEOUS CONDUCT

 Defendants argue that plaintiffs' outrageous conduct claims are preempted by the Colorado Workers' Compensation Act (CWCA). In addition, defendants contend that their conduct was not outrageous as a matter of law. Although I conclude that plaintiffs' claims are not preempted by the CWCA, I agree that summary judgment is appropriate on Zavilla's claim for outrageous conduct. I will deny summary judgment on Donaldson's and Morale's claims for outrageous conduct.

A plaintiff who is eligible for compensation under the CWCA is barred from instituting a private tort action for the same injury. *Mass v. Martin Marietta Corp.,* 805 F.Supp. 1530, 1543 (D.Colo.1992). The CWCA, however, only applies in limited circumstances.

> Conditions of Recovery. (1) The right to the compensation provided for in ... this title, in lieu of any other liability to any person for any personal injury ... shall obtain in all cases where the following conditions occur:
>
> . . . . .
>
> (c) Where the injury ... is proximately caused by an injury ... arising out of and in the course of the employee's employment and is not intentionally self-inflicted.

C.R.S. § 8–41–301 (Supp.1995). The CWCA, therefore, only provides compensation for injuries "arising out of" the employee's employment. *Id.* Colorado courts have consistently refused to dismiss tort claims where plaintiffs have alleged that defendants' acts were directed specifically at the plaintiffs. *See, e.g., Stamper v. Hiteshew,* 797 P.2d 784, 785–86 (Colo.Ct.App.1990) (stating that evidence of sexual harassment directed specifically at plaintiff was sufficient to show that injury did not arise out of employment); *Mass v. Martin Marietta Corp.,* 805 F.Supp. 1530, 1543 (D.Colo.1993) (stating that racial slurs directed at plaintiff could support a claim for intentional infliction of emotional distress and was not preempted by the CWCA).

Defendants argue that the actions complained of were "neutral" and not directed at the plaintiffs in particular. Rather, defendants contend that Bass never singled plaintiffs out by her comments and that she often made similar comments to other employees as well. A claim for an injury caused by a "neutral force" would be preempted by the CWCA. *Popovich v. Irlando,* 811 P.2d 379, 383 (Colo.1991). I am unpersuaded by defendants' argument.

According to the record before me, many of the comments made by Bass were specifically directed at plaintiffs. In fact, in several instances, no one else was present when the comments were made. This is a clear example of a claim premised upon an employer's actions that were directed at plaintiffs. Accordingly, I conclude that plaintiffs injuries did not "arise out of" their employment and their outrageous conduct claims are not barred by the CWCA.

 I turn next to whether plaintiffs have presented sufficient evidence to create a genuine issue of fact regarding their claims for outrageous conduct. It is well-settled under Colorado law that discharge from employment, without more, is not outrageous conduct. *Grandchamp v. United Air Lines, Inc.,* 854 F.2d 381, 384 (10th Cir.1988), *cert. denied,* 489 U.S. 1080, 109 S.Ct. 1534, 103 L.Ed.2d 838 (1989). At the same time, an employer is not shielded from employee claims of outrageous conduct. "Thus, the *manner* of discharge, and the employer's conduct is critical to a finding of outrageous conduct." *Id.* at 385. In Colorado, liability for the tort of intentional infliction of emotional distress may be found only where "the conduct has been so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 383 (quoting *Rugg v. McCarty,* 173 Colo. 170, 476 P.2d 753, 756 (1970)). The "defendant's conduct must be more than unreasonable, unkind or unfair; it must truly offend community notions of acceptable conduct." *Grandchamp,* 854 F.2d at 383. While the jury determines

the ultimate question of whether conduct is outrageous, the court must decide in the first instance whether reasonable persons could differ on the conduct being outrageous. *Rugg v. McCarty,* 476 P.2d 753, 754 (1970).

Plaintiffs argue that even if the defendants' conduct would not ordinarily be considered outrageous, Bass's position as plaintiffs' supervisor and owner of the business, make the conduct outrageous. "[C]onduct otherwise permissible may become extreme and outrageous if it is an abuse by an actor of a position in which she has actual or apparent authority over the other, or the power to affect the other's interests." *Weiszmann v. Kirkland and Ellis,* 732 F.Supp. 1540 (D.Colo.1990). Clearly, Bass, as president and owner of the company, possessed actual authority over plaintiffs' interests. Therefore, plaintiffs contend, defendants' conduct was sufficiently outrageous to be actionable.

Reasonable persons could find that defendants' actions here rise to the level of outrageous conduct towards Donaldson and Morale. Bass's insensitive and demeaning remarks, given her position of power over Donaldson and Morale, could be considered by a reasonable juror to "go beyond all possible bounds of decency."

I conclude as a matter of law, however, that defendants' conduct towards Zavilla does not meet the high standard set forth in *Rugg.* The comments made towards Zavilla were not significantly offensive or threatening, even coming from someone in Bass's position of authority, that reasonable jurors could find defendants' conduct towards Zavilla outrageous. Therefore, I will grant defendants' motion for summary judgment on Zavilla's claim for outrageous conduct.

Plaintiffs Donaldson and Morale have also offered evidence sufficient to raise genuine issues of fact regarding the "severity" of their emotional distress. In support of their claims, Donaldson and Morale present the following evidence.

Donaldson's husband stated that as a result of the comments made by Bass, Donaldson was "upset," "very irritable," "concerned about her job," "mad," "very emotional," "crying," and "embarrassed." (Pltf.Ex. J, pp. 69–72, 77, 78–79, 87.) In addition, Donaldson contends that after one of Bass's comments, she felt "humiliated." (Pltf.Ex. G, p. 88.) Donaldson has not alleged that Bass's comments interfered with her ability to work or that she ever sought any counselling as a result of defendants actions.

Morale has presented evidence that Bass's comments and actions caused her to cry on several occasions, and that she was unable to work for short periods of time on those occasions. (Pltf.Ex. B, pp. 29–30, 33–35, 41–42, 52, 77–79, 81.) Morale also contends that she was "tense," "stressed," "uncomfortable," and "very troubled" by Bass's conduct. She also presented evidence that at least one person noticed that she seemed to be preoccupied at work, but he did not know the reason for her preoccupation. (Pltf.Ex. I, p. 181.)

I find that Donaldson and Morale have presented sufficient evidence to create a genuine issue of fact whether they suffered severe emotional distress as a result of defendants' conduct. Thus, I will deny defendants' motion for summary judgment on Donaldson's and Morale's claims for outrageous conduct.

## D. NON–PREGNANCY RELATED CLAIMS

Defendants contend that plaintiffs' claims should be limited to charges of discrimination relating only to pregnancy, rather than broader gender-based discrimination claims, because plaintiffs' EEOC charges recite solely allegations of pregnancy discrimination. Plaintiffs conceded at oral argument that their claims in this case are limited to those arising under the PDA. Therefore, I will grant defendants' motion for summary judgment to the extent that plaintiffs' Complaint may have stated a claim for broader, gender-based discrimination.

Defendants also asserted during oral argument that plaintiffs' EEOC charges could only support claims of sexual harassment and not claims for disparate treatment. I disagree. Each EEOC charge contains various

allegations of pregnancy-based discrimination and harassment. In addition, each charge indicates when the plaintiff was terminated from her job at Banco. Consequently, the EEOC charges can be fairly read to give sufficient notice to the EEOC and the defendants that plaintiffs were claiming both harassment and disparate treatment by illegal termination.

## E. PLAINTIFF ZAVILLA'S CLAIMS

Zavilla's EEOC charge identified four specific adverse actions that she contends constituted illegal discrimination:

1. Hostile and critical remarks by the "owner" in 1991 when she gained custody of her step-children regarding her change in priorities;

2. Comments in 1992–93 about how old she was to be pregnant;

3. Two demotions: once in March 1991 when she gained custody of her step-children, and again on August 15, 1993, when she returned from maternity leave;

4. Involuntary termination on April 29, 1994.

With the exception of the fourth action above, defendants contend that Zavilla is time-barred from bringing any claims based upon the allegations listed. Further, defendants assert that Zavilla should also be barred from bringing a claim based upon her April 29, 1994 termination because the reasons she alleged for the termination in her EEOC charge cannot support a Title VII claim. I agree that Zavilla's claim for sex discrimination is, in part, time-barred, but only to the extent that it relies upon the comments and demotion relating to her step-children. In addition, Zavilla is not barred from bringing a claim based upon her 1994 termination.

To the extent that Zavilla is attempting to make a claim based upon her alleged demotion due to pregnancy, the time-bar question is moot. Zavilla does not allege the demotion in her Complaint, and it cannot, therefore, be the basis for a claim. Thus, she cannot claim damages due to any loss of pay from the demotion. However, it may be evidence probative of hostile work environment.

### 1. *Statute of Limitations*

■ Zavilla brought her EEOC charge on June 21, 1994. Because Colorado has a state agency to investigate charges of discrimination, Zavilla had 300 days within which to file charges of discrimination with the EEOC. 42 U.S.C. § 2000–5(e)(1). Therefore, any alleged discrimination occurring before August 23, 1993, is time-barred. Defendants thus contend that Zavilla should not be permitted to rely upon any of the alleged acts listed in items one through three of her EEOC charge. I disagree.

■ Defendants ignore the continuing violation exception to the statute of limitations. To invoke the continuing violation exception to the charge-filing deadline of Title VII, Zavilla must show either "(1) a series of related acts taken against a single individual, one or more of which falls within the limitations period, or (2) the maintenance of a company-wide policy of discrimination both before and during the limitations period." *Purrington v. University of Utah*, 996 F.2d 1025, 1028 (10th Cir.1993). A claim for "hostile environment ... usually involves a continuing violation." *Id.* (quoting *Waltman v. International Paper Co.*, 875 F.2d 468, 476 (5th Cir.1989)).

■ To prove a series of related acts, Zavilla must show a "dogged pattern" of discrimination as distinguished from "isolated and sporadic outbreaks." *Bruno v. Western Elec. Co.*, 829 F.2d 957 (10th Cir.1987). Three factors are relevant to whether a party has shown a continuing violation through a series of related acts: "(1) whether the alleged acts involve the same type of violation; (2) whether the acts are recurring versus isolated; and perhaps most important; (3) whether the acts have the degree of permanence which should alert the employee to the duty to assert her rights." *Purrington*, 996 F.2d at 1028. Permanency depends on what the plaintiff knew at the time of the alleged discrimination. *Id.* Accordingly, harassment claims generally have a lower degree of permanence than claims of discrimination. *Id.*

Zavilla's allegations of hostile and critical remarks regarding her pregnancy relate to her claim of harassment. Zavilla and the other plaintiffs alleged that the harassment continued from the time they announced their pregnancies until they were dismissed, a textbook example of a series of related acts. I cannot conclude as a matter of law that Zavilla is barred from basing her harassment claim on the pregnancy-related comments (Item No. 2 in her EEOC list).

■ Zavilla's allegations of negative comments regarding her step-children, however, do not constitute part of a series of related acts. The relationship between those comments and harassment based on pregnancy is tenuous at best. Together, they do not constitute a "dogged pattern" of discrimination. Similarly, Zavilla's alleged demotion due to gaining custody of her step-children cannot be considered part of a series of related acts.

The remarks and alleged demotion regarding Zavilla's step-children also do not qualify under the second prong of the continuing violation exception. They are not evidence of a company-wide policy of discrimination. The connection to the alleged pregnancy discrimination is, again, tenuous at best. In addition, it is doubtful that the PDA was intended to prohibit discrimination based upon one's status as an adoptive parent. That is a gender-neutral proposition. Therefore, I will grant defendants' motion for summary judgment to the extent that neither the demotions nor the comments regarding Zavilla's step-children may serve as a basis for Zavilla's claims (Items Nos. 1 and 3 in her EEOC list).

### 2. Scope of Zavilla's EEOC Charge

■ Defendants contend that Zavilla's EEOC charge does not contain any allegation that she was discharged in 1994 because of her pregnancy. Therefore, according to defendants, Zavilla has not exhausted her administrative remedies with regard to her pregnancy-related claim. Instead, defendants state, Zavilla relies upon an impermissible basis for her discrimination claim, her status as a parent. Accordingly defendants move for summary judgment. I will deny defendants' motion.

Zavilla's EEOC charge states: "I feel I was let go because the owner thought I would have more children and need more time off from work and thus, I would be a liability to the company." As I have discussed, Title VII protects women from being fired because they *planned* to become pregnant. In addition, Zavilla's EEOC charge and accompanying intake questionnaire contain numerous references to pregnancy discrimination. For example, in the EEOC charge, Zavilla states: "During my pregnancy in 1992 and 1993, the owner made comments to me and to co-workers about how old I was to be pregnant." Further, the intake questionnaire includes boxes to check regarding the "basis" for the charge, and Zavilla checked "pregnancy," "sex" and "age." Also, when asked for the specific reasons she believed prompted the discriminatory actions against her, Zavilla responded: "specific comments made to me and others regarding my pregnancy."

Defendants state that the EEOC did not provide them with copies of the intake questionnaires. Zavilla should not be penalized for that oversight. In addition, the EEOC charge itself provides adequate notice to defendants that pregnancy discrimination is to be an issue in this case.

### IV.

### A. DEFENDANTS' MOTIONS TO DISMISS

Two motions to dismiss are pending. In defendants first motion, which was included with their response to plaintiffs' earlier motion to amend complaint, defendants moved to dismiss plaintiffs' claims for outrageous conduct. Defendants argue that I should decline to exercise supplemental jurisdiction over plaintiffs' outrageous conduct claims. Although I will grant defendants' motion for summary judgment on Zavilla's claim for outrageous conduct, Donaldson and Morale have presented sufficient evidence to survive summary judgment on their outrageous conduct claims. For the reasons set forth below, I will deny defendants motion and will exercise supplemental jurisdiction over Donaldson's and Morale's outrageous conduct claims.

In addition, defendant Bass moves to dismiss all claims against her in her individual capacity. Bass contends that plaintiffs' first claim for relief under Title VII does not apply to her as an individual. Further, Bass asserts that plaintiffs have failed to state a claim for outrageous conduct and/or that the court should decline to exercise its supplemental jurisdiction over the claim for outrageous conduct. Plaintiffs confessed their Title VII claims against Bass at oral argument in light of *Haynes v. Williams*, 88 F.3d 898 (10th Cir.1996) (holding that there is no individual liability under Title VII). Therefore, I will grant Bass's motion to dismiss plaintiffs' claims for harassment and discrimination; however, for the reasons stated below, I will deny Bass's motion to dismiss Donaldson's and Morale's claims for outrageous conduct.

 The decision to exercise supplemental jurisdiction is discretionary to the extent permitted by 28 U.S.C. § 1367(c). *James v. Sun Glass Hut of California*, 799 F.Supp. 1083, 1084–85 (D.Colo.1992). Section 1367(c) states that a district court may decline to exercise supplemental jurisdiction if the state law claims substantially predominate over the federal claims. Here, state law claims do not substantially predominate the federal claims. Although the elements for plaintiffs Title VII claims and their outrageous conduct claims are distinct, plaintiffs rely on common evidence in support of their claims. Therefore, continuing to exercise supplemental jurisdiction over the remaining outrageous conduct claims will not greatly complicate or expand this action. In addition, although the only remaining claims against Bass individually are for outrageous conduct, she will necessarily be involved in the defense of the Title VII claims as president of Banco and as a representative owner/shareholder defendant. Thus, I will continue to exercise supplemental jurisdiction over Donaldson's and Morale's claims for outrageous conduct against all defendants.

In addition, I will deny Bass's motion to dismiss the outrageous conduct claims against her for failure to state a claim under Fed.R.Civ.P. 12(b)(6). Plaintiffs' Complaint contains sufficient allegations to support Donaldson's and Morale's claims for outra-

geous conduct. All of the comments allegedly made by Bass that are discussed above were contained within the Complaint. Complaint ¶ 37. In addition, Donaldson and Morale both allege that they suffered severe emotional distress as a result of Bass's actions. Complaint ¶ 38. Therefore, assuming that all of the allegations contained within the Complaint are true, Donaldson and Morale have stated claims for outrageous conduct against Bass.

## B. PLAINTIFFS' REQUEST FOR SANCTIONS AGAINST DEFENDANTS

Plaintiffs move for sanctions against Bass for filing the motion to dismiss the claims against her individually. Plaintiffs contend that defendants should be sanctioned because (1) Bass filed the motion beyond the deadline for filing dispositive motions and (2) Bass repeated many of the same arguments that defendants asserted in their response to plaintiffs' motion to amend the complaint, which plaintiffs contend has already been ruled upon by Magistrate Judge Pringle. I will deny plaintiffs' request for sanctions.

 The deadline for filing dispositive motions was April 30, 1996. On May 1, 1996, Magistrate Judge Pringle entered a Minute Order that granted plaintiffs' motion to amend the complaint to add Bass as a defendant in her individual capacity. Until then, Bass was not an individual party in the suit, and she could not have filed a motion to dismiss the claims against her prior to May 1, 1996. It makes no sense to hold her to an April 30, 1996 date for dispositive motions. The motion to dismiss was filed on June 5, 1996, a month after Bass was officially added to the caption of the case as an individual. At worst, Bass failed to request leave of the court to file her motion, but such failure does not warrant sanctions.

I am also not persuaded that Bass should be sanctioned for repeating defendants' arguments from their response to plaintiffs' motion to amend the Complaint. Magistrate Pringle's Minute Order fails to address the merits of Bass's argument that Title VII does not apply to individuals. I will also not infer from his decision to add Bass to the

caption of the case that he decided the motions to amend on a futility basis. Indeed, Bass's motion to dismiss was confessed at oral argument as it relates to issue of individual liability under Title VII. In addition, Magistrate Pringle's Minute Order expressly states that he did not have jurisdiction to decide whether the state law claim of outrageous conduct should be dismissed. Defendants had moved the court to dismiss and/or refuse to exercise supplemental jurisdiction over the outrageous conduct claim as part of their response to plaintiffs' motion to amend complaint. It is understandable that Bass repeated those arguments in her motion to dismiss. As she was not a party to the suit until May 1, 1996, she had an interest in asserting those same arguments on her own behalf.

Consequently, I will deny plaintiffs' request for sanctions.

### V.

Accordingly, it is ORDERED that:

1. Defendants' first motion for summary judgment is GRANTED to the extent that Zavilla's claim for outrageous conduct is DISMISSED, and DENIED in all other respects;

2. Defendants' second motion for summary judgment is GRANTED to the extent that plaintiffs' Title VII claims are limited to those arising under the PDA and Zavilla may not base her disparate treatment claim on either the demotions or the alleged remarks regarding her step-children that are detailed in her EEOC charge;

3. Defendants' motion to dismiss plaintiffs' supplemental state law claims is DENIED;

4. Defendant Bass's motion to dismiss is GRANTED to the extent that plaintiffs' claims under Title VII against Bass individually are DISMISSED, and DENIED with respect to the outrageous conduct claims of Donaldson and Morale;

5. Plaintiffs' request for sanctions against Bass is DENIED.